## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

                *Plaintiff,*

    v.

PARKER–HANNIFIN CORPORATION
and CLARCOR INC.

                *Defendants.*

C.A. No. 17-1354–JEJ

## STIPULATION AND     , ORDER
## TO PRESERVE AND MAINTAIN ASSETS

1. Plaintiff United States filed a complaint on September 26, 2017, alleging that Defendant Parker-Hannifin Corporation's ("Parker") acquisition of certain aviation fuel filtration assets of CLARCOR Inc. ("Clarcor") violated Section 7 of the Clayton Act, 15 U.S.C. § 18.

2. Plaintiff seeks an order requiring Parker to divest either Parker-Hannifin's or Clarcor's qualified aviation fuel filtration assets and such other temporary or permanent relief as may be necessary to preserve the possibility of effective permanent relief.

3. Defendant Parker has agreed to preserve and maintain certain qualified aviation fuel filtration assets pending a resolution on the merits of this action.

4. Parker agrees to this Order.

WHEREFORE, for good cause shown, it is hereby ORDERED:

For the purpose of this Order, the following definitions shall apply:

A. "Parker" means Defendant Parker-Hannifin Corporation, a Ohio corporation with its headquarters in Cleveland, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B. "Clarcor" means CLARCOR Inc., a former Delaware corporation with its headquarters in Franklin, TN, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Facet Assets" means all assets used in the design, development, manufacture, sale and service of Clarcor's Qualified Aviation Fuel Filtration Products, sold under the Facet brand to United States customers, that were acquired by Parker from Clarcor on February 28, 2017, including but not limited to:

(1) all specifications, manufacturing plans, assembly instructions, standard operating procedures, and work instructions related to the manufacturing process, including all right, title and interest in or to all other assets of every kind and nature used or intended to be used in the operation of the Facet Assets, including, but not limited to, any finished or unfinished inventory, any materials, data or know-how wherever found or of whatever kind reasonably required to manufacture and sell Qualified Aviation Fuel Filtration Products, as well as all books and records, and all files, documents, papers and agreements that are material to the continuing operation of the Facet Assets;

(2) all finished goods, works in progress, piece parts and materials inventory, packaging, and labels, supplies and other related personal property;

(3) all equipment, machinery or software currently used in the development, design, manufacturing and testing of Qualified Aviation Fuel Filtration Products;

(4) all right, title and interest in, and all information related to, any tooling, molds, equipment and proprietary specifications Clarcor has with any and all vendors from which Clarcor purchases goods or services, whether or not there are any "open" purchase orders issued to such vendors, as well as names and other information concerning any vendor that provides goods or services that are material to the operation of the Facet Assets;

(5) any list of customers to which Clarcor previously sold products or provided services over the three years prior to February 28, 2017, whether or not there are any "open" sales orders from such customers;

(6) all sales, marketing and promotional literature, cost and pricing data, promotion list, marketing data and other compilations of names and requirements, customer lists and other sales-related materials;

(7) all intellectual property assets or rights that are used in the development, production, servicing, and sale of Qualified Aviation Fuel Filtration Products, including but not limited to: all licenses, rights, and sublicenses, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, approvals, certifications, advertising literature, and all manuals and technical information provided to the employees, customers, suppliers, agents, or licensees of Clarcor and used in connection with the development, design, manufacture, testing, markets, sale or distribution of Qualified Aviation Fuel Filtration Products;

(8) all rights under all contracts, licenses, sublicenses, agreements, leases, building leases, commitments, purchase orders, bids and offers; and

(9) all rights acquired pursuant to municipal, state and federal franchises, permits, licenses, agreements, waivers and authorizations.

D. "Qualified Aviation Fuel Filtration Products" means aviation fuel filtration systems and aviation fuel filter elements sold to customers in the United States and qualified to Energy Institute standards, including microfilter systems, filter water separator systems, filter monitor systems, microfilters, coalescers, separators, and monitors.

E. "Velcon Assets" means all assets used in the design, development, manufacture, sale and service of Parker's Qualified Aviation Fuel Filtration Products, sold under the Velcon brand to United States customers, including but not limited to:

(1) all specifications, manufacturing plans, assembly instructions, standard operating procedures, and work instructions related to the manufacturing process, including all right, title and interest in or to all other assets of every kind and nature used or intended to be used in the operation of the Velcon Assets, including, but not limited to, any finished or unfinished inventory, any materials, data or know-how wherever found or of whatever kind reasonably required to manufacture and sell Qualified Aviation Fuel Filtration Products, as well as all books and records, and all files, documents, papers and agreements that are material to the continuing operation of the Velcon Assets;

(2) all finished goods, works in progress, piece parts and materials inventory, packaging, and labels, supplies and other related personal property;

(3) all equipment, machinery or software currently used in the development, design, manufacturing and testing of Qualified Aviation Fuel Filtration Products;

(4) all right, title and interest in, and all information related to, any tooling, molds, equipment and proprietary specifications Parker has with any and all vendors from which Parker

purchases goods or services, whether or not there are any "open" purchase orders issued to such vendors, as well as names and other information concerning any vendor that provides goods or services that are material to the operation of the Velcon Assets;

(5) any list of customers to which Parker previously sold products or provided services over the three years prior to February 28, 2017, whether or not there are any "open" sales orders from such customers;

(6) all sales, marketing and promotional literature, cost and pricing data, promotion list, marketing data and other compilations of names and requirements, customer lists and other sales-related materials;

(7) all intellectual property assets or rights that are used in the development, production, servicing, and sale of Qualified Aviation Fuel Filtration Products, including but not limited to: all licenses, rights, and sublicenses, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, approvals, certifications, advertising literature, and all manuals and technical information provided to the employees, customers, suppliers, agents, or licensees of Parker and used in connection with the development, design, manufacture, testing, markets, sale or distribution of Qualified Aviation Fuel Filtration Products;

(8) all rights under all contracts, licenses, sublicenses, agreements, leases, building leases, commitments, purchase orders, bids and offers; and

(9) all rights acquired pursuant to municipal, state and federal franchises, permits, licenses, agreements, waivers and authorizations.

F. "Material Transaction" shall include any sale, transfer, lease, assignment, or other disposal to a third-party of Facet Assets or Velcon Assets that materially impairs the ability of the

Facet Assets or the Velcon Assets to be operated in the ordinary course of business, including disposal of (1) any Facet Assets or Velcon Assets with a fair market value greater than $5,000, excluding ordinary course of business sales of Velcon or Facet products to customers, distributors, or other purchasers or ordinary course of business vessel sales or licenses to third parties; (2) Parker or Clarcor aviation fuel filtration qualifications, certifications, or intellectual property rights; or (3) Parker or Clarcor aviation fuel filtration customer or distribution contracts.

It is FURTHER ORDERED that:

A. While this litigation is pending, other than proceedings related to the Tunney Act, Parker will provide forty-five (45) business days written notice ("the Notice Period") to counsel for the United States before consummating any Material Transaction.

B. Except for a Material Transaction, Parker, and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Parker who receive actual notice of this Order by personal service or otherwise, are hereby ordered to preserve and maintain the Facet Assets and the Velcon Assets, unless the United States consents in writing, and are restrained from

- (1) licensing or encumbering any such asset;

- (2) transferring or reassigning to other facilities of Parker, or dismissing (except for cause or ordinary performance-related reasons), employees necessary to the Facet Assets or Velcon Assets; and

- (3) idling any fabrication, assembly or testing lines (or equipment comprising those lines) other than in the ordinary course of business;

or causing or assisting others in carrying out any of these prohibited activities.

C. Unless the United States consents in writing, Parker, and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Parker who receive actual notice of this Order by personal service or otherwise, are hereby ordered

(1) not to dismiss (except for cause or ordinary performance-related reasons) current employees involved with the development, design, manufacturing, testing and sale of products or management related to the Facet Assets or Velcon Assets;

(2) to take all commercially reasonable steps necessary to ensure that the Facet Assets and Velcon Assets are fully maintained in an operable condition at no less than the capacity on February 28, 2017 and to maintain and adhere to normal repair and maintenance schedules for the Facet Assets and Velcon Assets;

(3) to take all commercially reasonable steps necessary to ensure that the Facet Assets and Velcon Assets retain all regulatory approvals, including but not limited to certifications and qualifications;

(4) to take all reasonable efforts to maintain and increase the sales and revenues of Qualified Aviation Fuel Filtration Products, and shall use reasonable best efforts to maintain at levels in place on February 28, 2017 all promotional, advertising, sales, technical assistance, marketing and merchandising support for such products; and

(5) to provide sufficient working capital and lines and sources of credit to continue to maintain the Facet Assets and Velcon Assets as economically viable and competitive ongoing businesses.

D. Parker is hereby ordered to appoint distinct persons to oversee each of the Velcon Assets and Facet Assets who will each be responsible for Parker's compliance with this Order and shall have managerial responsibility for such assets, which includes managerial responsibility with respect to

sales, marketing, prices, discounts, output, customers, and inputs related to Qualified Aviation Fuel

Filtration Products of their respective businesses.

E. This Order is considered executed and binding once signed by both parties and filed with the

Court.

F. This Order shall not expire until Judgment is entered in this matter and any appeals are final.

G. This Order is without prejudice to the United States seeking additional relief at any time pending

a final determination of the merits.

**Dated: October 13, 2017**

BY:

/s/ Samer M. Musallam
SAMER M. MUSALLAM
SOYOUNG CHOE
United States Department of Justice
Antitrust Division
450 Fifth Street, NW
Washington, DC 20530
Telephone: (202) 598-2990
Facsimile: (202) 514-9033
samer.musallam@usdoj.gov

/s/ Jennifer Hall
JENNIFER HALL (#5122)
LAURA HATCHER (#5098)
Assistant United States Attorneys
United States Attorney's Office
1007 Orange Street, Suite 700
Wilmington, DE 19801
(302) 573-6277
jennifer.hall@usdoj.gov

*Attorneys for the Plaintiff United States of America*

/s/ Jeffrey L. Moyer
JEFFREY L. MOYER (#3309)
KATHARINE L. MOWERY (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
mowery@rlf.com

Of Counsel:

JOHN M. MAJORAS
JONES DAY
51 Louisiana Ave., NW
Washington, D.C. 2003
(202) 879-7652
jmmajoras@jonesday.com

*Attorneys for Defendants Parker-Hannifin Corporation and CLARCOR, Inc.*

**IT IS SO ORDERED.**

_____10-16-17_____

Date

Judge John E. Jones III