IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　*Plaintiff,*<br><br>　　　v.<br><br>PARKER-HANNIFIN CORPORATION<br><br>and<br><br>CLARCOR INC,<br><br>　　　　　*Defendants.* | C.A. No. 17-1354-JEJ |

**MODIFIED　　FINAL JUDGMENT**

　　WHEREAS, Plaintiff, United States of America, filed its Complaint on September 26, 2017, the United States and defendants, Parker-Hannifin Corporation and CLARCOR Inc., by their respective attorneys, have consented to the entry of this Modified Final Judgment without trial or adjudication of any issue of fact or law, and without this Modified Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

　　AND WHEREAS, defendants agree to be bound by the provisions of this Modified Final Judgment pending its approval by the Court;

　　AND WHEREAS, the essence of this Modified Final Judgment is the prompt and certain divestiture of certain rights or assets by defendants to assure that competition is not substantially lessened;

　　AND WHEREAS, the United States requires defendants to make a certain divestiture for the purpose of remedying the loss of competition alleged in the Complaint;

2

AND WHEREAS, defendants have represented to the United States that the divestiture required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Modified Final Judgment:

A. "Acquirer" means the entity to whom defendants divest the Divestiture Assets.

B. "Aviation Fuel Filtration Products" means the systems and elements that include and comprise microfilters, filter water separators and filter monitor components that are used in aviation ground fuel filtration and sold to customers under the Facet or PECOFacet brands.

C. "Parker-Hannifin" means defendant Parker-Hannifin Corporation, an Ohio corporation with its headquarters in Cleveland, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.  "Clarcor" means defendant CLARCOR Inc., a Delaware corporation, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.  "Divestiture Assets" means the Facet Filtration Business.

F.  "Divestiture Products" means: (1) Aviation Fuel Filtration Products, including clay filter systems and elements used in aviation ground fuel filtration; (2) sewage water treatment systems, fuel/water separator and filter components systems and elements, and bilge water separators, that, in each instance are used in commercial marine, offshore drilling, and military marine filtration applications, and sold to customers under the PECOFacet brand; and (3) oil/water filtration and separation systems and sewage treatment systems, that, in each instance are used in environmental water filtration applications, and sold to customers under the PECOFacet brand.

G.  "Facet Filtration Business" means all assets of Parker-Hannifin used in the design, development, manufacturing, testing, marketing, sale, distribution or service of Divestiture Products, including:

1.  The facilities, to the extent leased or owned, located at:

   a.  470555 E 868 Road, Stilwell, OK 74960;

   b.  5935 S 129th E Ave, Suite A, Tulsa, OK 74134;

   c.  Avenida da Ponte, 16, 15142, Arteixo, La Coruña, Spain;

   d.  22, Avenue des Nations, ZI Paris Nord II, BP 69055, 95972 Roissy CDG Cedex, France;

   e.  C. so IV Novembre n. 58, 10070 Cafasse (Torino), Italy;

4

    f.  Units 4.3 and 4.4, Treforest Industrial Estate, Pontypridd, Mid Glamorgan, CF37 5FB, United Kingdom; and

    g.  Damsluisweg 40A 1332 ED, Almere, The Netherlands;

  2.  The 2,080 sq. ft. aviation fuel filtration testing lab building located at 8439 Triad Drive, Greensboro, NC 27409, including rights to reasonably access the facility;

  3.  All tangible assets used by the Facet Filtration Business, including all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records, but excluding: (i) PECOFacet Quick Response Centers and all assets therein, (ii) Parker-Hannifin offices located in Australia, Brazil, Canada, China, Germany, Malaysia, Mexico, and Morocco, and all assets therein, and (iii) Clarcor-owned distributors that sell Divestiture Products;

  4.  All intangible assets owned, licensed, controlled, or used primarily by the Facet Filtration Business, including, but not limited to, all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names (excluding any trademark, trade name or service mark, or service name containing the names "Clarcor," "PECO," or "PECOFacet," except to the extent the Acquirer is required under existing U.S. military contracts for EI-qualified Aviation Fuel Filtration Products to use the name "PECOFacet," but in no event shall such use extend beyond one year following the entry of this Modified Final Judgment), technical information, computer software and related documentation,

5

know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, manuals and technical information defendants provide to their own employees, customers, suppliers, agents, or licensees, and research data concerning historic and current research and development efforts, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

  H. "Local Regulatory Approvals" means approvals required by the City of Greensboro, North Carolina or the government of Guilford County, North Carolina.

  I. "Relevant Employees" means all personnel primarily involved in the design, development, manufacturing, testing, marketing, sale, distribution or service of Divestiture Products.

  I. "Required Regulatory Approvals" means clearance pursuant to any Committee on Foreign Investment in the United States ("CFIUS") filing or similar foreign investment filing, if any, made by the defendants and/or Acquirer and any approvals or clearances required under antitrust or competition laws.

  J. "Transaction" means Parker-Hannifin Corporation's acquisition of CLARCOR Inc. pursuant to the Agreement and Plan of Merger dated as of December 1, 2016.

### III. Applicability

A.    This Modified Final Judgment applies to Parker-Hannifin and Clarcor, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Modified Final Judgment by personal service or otherwise.

B.    If, prior to complying with Section IV and Section V of this Modified Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Modified Final Judgment. Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Modified Final Judgment.

### IV. Divestiture

A.    Defendants are ordered and directed, within the later of: (1) one hundred thirty-five (135) calendar days after filing of the [Proposed] Order Stipulating to Modification of Order to Preserve and Maintain Assets, (2) five (5) calendar days after notice of entry of this Modified Final Judgment by the Court, or (3) fifteen (15) calendar days after Required Regulatory Approvals have been received, to divest the Divestiture Assets in a manner consistent with this Modified Final Judgment to an Acquirer acceptable to the United States, in its sole discretion, except that Defendants shall divest the Divestiture Asset identified in Paragraph II(G)(2) within the earlier of fifteen (15) calendar days after Local Regulatory Approvals have been received or twenty-four (24) months from notice of entry of this Modified Final Judgment by the Court. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed thirty (30) calendar days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.  In accomplishing the divestiture ordered by this Modified Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Modified Final Judgment and provide that person with a copy of this Modified Final Judgment. Defendants shall offer to furnish to prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privileges or work-product doctrine. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.  Defendants shall provide the Acquirer and the United States with organization charts and information relating to Relevant Employees, including name, job title, past experience relating to the Facet Filtration Business, responsibilities, training and educational history, relevant certifications, and to the extent permissible by law, job performance evaluations, and current salary and benefits information, to enable the Acquirer to make offers of employment. Upon request, defendants shall make Relevant Employees available for interviews with the Acquirer during normal business hours at a mutually agreeable location and will not interfere with any negotiations by the Acquirer to employ any Relevant Employee. Interference with respect to this paragraph includes, but is not limited to, offering to increase the salary or benefits of Relevant Employees other than as a part of a company-wide increase in salary or benefits granted in the ordinary course of business.

D.  For any Relevant Employees who elect employment with the Acquirer, defendants shall waive all noncompete and nondisclosure agreements, vest all unvested pension

rights in accordance with the plan, and provide all benefits to which the Relevant Employees would generally be provided if transferred to a buyer of an ongoing business. For a period of twelve (12) months from the filing of the [Proposed] Order Stipulating to Modification of Order to Preserve and Maintain Assets in this matter, defendants may not solicit to hire, or hire, any such person who was hired by the Acquirer, unless (1) such individual is terminated or laid off by the Acquirer or (2) the Acquirer agrees in writing that defendants may solicit or hire that individual. Nothing in Paragraphs IV(C) and (D) shall prohibit defendants from maintaining any reasonable restrictions on the disclosure by any employee who accepts an offer of employment with the Acquirer of the defendant's proprietary non-public information that is (1) not otherwise required to be disclosed by this Modified Final Judgment, (2) related solely to defendants' businesses and clients, and (3) unrelated to the Divestiture Assets.

E. Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Facet Filtration Business; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F. Defendants shall warrant to the Acquirer that each tangible asset will be operational on the date of sale subject to ordinary course maintenance and wear and tear.

G. Defendants shall not take any action that will knowingly impede in any material way the permitting, operation, or divestiture of the Divestiture Assets.

H. Defendants shall warrant to the Acquirer that, except as may be expressly disclosed, there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each tangible asset, and that following the sale of the Divestiture Assets,

defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets, except as related to the asset identified in Paragraph II(G)(2) to the extent that the Acquirer's operation of the asset is inconsistent with past practice and materially impacts the operation of Parker-Hannifin's retained operations at the same location.

  I. Within two years following the notice of entry of this Modified Final Judgment, or as soon as is practicable under existing contracts or laws, defendants will use reasonable best efforts to transition retained products sold under the "PECOFacet" brand to a brand that does not include the "Facet" name.

  J. At the option of the Acquirer, Parker-Hannifin shall enter a transition services agreement to provide back office and information technology services and support for the Facet Filtration Business for a period of up to twelve (12) months. The United States, in its sole discretion, may approve one or more extensions of this agreement for a total of up to an additional twelve (12) months. If the Acquirer seeks an extension of the term of this transition services agreement, it shall so notify the United States in writing at least three (3) months prior to the date the transition services contract expires. If the United States approves such an extension, it shall so notify the Acquirer in writing at least two (2) months prior to the date the transition services contract expires. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to the market value of the expertise of the personnel providing any needed assistance. The Parker-Hannifin employee(s) tasked with providing these transition services may not share any competitively sensitive information of the Acquirer with any other Parker-Hannifin employee.

10

K.	Until Parker-Hannifin has received Local Regulatory Approvals, Parker-Hannifin shall enter a transition lease agreement with the Acquirer for the Divestiture Asset described in Paragraph II(G)(2).

L.	Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by Divestiture Trustee appointed pursuant to Section V, of this Modified Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business of the development, design, manufacture, testing, marketing, sale, or distribution of Aviation Fuel Filtration Products qualified to Energy Institute standards and sold to customers in the United States.  Divestiture of the Divestiture Assets, whether pursuant to Section IV or Section V of this Modified Final Judgment,

(1)	shall be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the development, manufacture, and sale of Aviation Fuel Filtration Products qualified to Energy Institute standards that are sold to customers in the United States; and

(2)	shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and defendants give defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. Appointment of Divestiture Trustee

A.	If defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), defendants shall notify the United States of that fact in writing.

11

Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B. After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets. The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Modified Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Paragraph V(D) of this Modified Final Judgment, the Divestiture Trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture. Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C. Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

D. The Divestiture Trustee shall serve at the cost and expense of defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The Divestiture Trustee shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's

accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount. If the Divestiture Trustee and defendants are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to defendants and the United States.

   E.  Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture. The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F. After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Modified Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G. If the Divestiture Trustee has not accomplished the divestiture ordered under this Modified Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such report contains information that the Divestiture Trustee deems confidential, such report shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Modified Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H. If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

### VI. Notice of Proposed Divestiture

A. Within two (2) business days following execution of a definitive divestiture agreement, defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or Section V of this Modified Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B. Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States

15

provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Paragraph V(C) of this Modified Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

### VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Modified Final Judgment.

### VIII. Asset Preservation

Until the divestiture required by this Modified Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the [Proposed] Order Stipulating to Modification of Order to Preserve and Maintain Assets, which is intended to supersede the Stipulation and Order to Preserve and Maintain Assets (D.I. 20) entered by this Court on October 16, 2017. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

### IX. Affidavits

A. Within twenty (20) calendar days of the filing of the proposed Order Stipulating to Modification of Order to Preserve and Maintain Assets in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or Section V, defendants shall deliver to the United States an affidavit, signed by each defendant's Chief Financial Officer and General Counsel which shall describe the fact and manner of defendants' compliance with Section IV or Section V of this Modified Final Judgment. Each such affidavit

shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

    B.    Within twenty (20) calendar days of the filing of the proposed Order Stipulating to Modification of Order to Preserve and Maintain Assets in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Modified Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

    C.    Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

### X. Compliance Inspection

    A.    For the purposes of determining or securing compliance with this Modified Final Judgment, or of any related orders such as the [Proposed] Order Stipulating to Modification of Order to Preserve and Maintain Assets, or of determining whether the Modified Final Judgment

should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

    (1)    access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Modified Final Judgment; and

    (2)    to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Modified Final Judgment as may be requested.

C.    Pursuant to the Joint Stipulated Protective Order entered on November 29, 2017 and all applicable rules and regulations, no information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Modified Final Judgment, or as otherwise required by law.

D.   If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

Defendants may not reacquire any part of the Divestiture Assets that is primarily related to Aviation Fuel Filtration Products during the term of this Modified Final Judgment.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Modified Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Modified Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. Enforcement of Modified Final Judgment

A.   The United States retains and reserves all rights to enforce the provisions of this Modified Final Judgment, including its right to seek an order of contempt from this Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Modified Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and they waive any argument that a different standard of proof should apply.

D.   If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

Defendants may not reacquire any part of the Divestiture Assets that is primarily related to Aviation Fuel Filtration Products during the term of this Modified Final Judgment.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Modified Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Modified Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. Enforcement of Modified Final Judgment

A.   The United States retains and reserves all rights to enforce the provisions of this Modified Final Judgment, including its right to seek an order of contempt from this Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Modified Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and they waive any argument that a different standard of proof should apply.

B. In any enforcement proceeding in which the Court finds that the defendants have violated this Modified Final Judgment, the United States may apply to the Court for a one-time extension of this Modified Final Judgment, together with such other relief as may be appropriate. Defendants agree to reimburse the United States for any attorneys' fees, experts' fees, and costs incurred in connection with any effort to enforce this Modified Final Judgment.

### XIV. Expiration of Modified Final Judgment

Unless this Court grants an extension, this Modified Final Judgment shall expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Modified Final Judgment may be terminated upon notice by the United States to the Court and defendants that the divestitures have been completed and that the continuation of the Modified Final Judgment no longer is necessary or in the public interest.

### XV. Public Interest Determination

Entry of this Modified Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Modified Final Judgment, the Competitive Impact Statement, and any comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Modified Final Judgment is in the public interest.

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.

IT IS SO ORDERED.

_____April 30, 2018_____         _____/s/ John E. Jones III_____
Date                                                              Judge John E. Jones III